Okay, we're on for the final argument of the morning session, Gentles v. Borough of Pottstown, appellate number 22-2925. May it please the Court, Becca Steinberg for Appellant Sekema Gentles. With the Court's permission, I'd like to reserve three minutes for rebuttal. You'll be granted. This case stems from an anonymous phone call that a black man was looking in garage windows. Nothing indicated that the call was reliable. And the call seemed to relate only to garages. So when the caller said the person had left and Portak confirmed the alley was empty, there shouldn't have been any reason to worry. But instead, when Portak came across Gentles a mile away with his three and four-year-old kids in the backseat of his car, Portak initiated a seizure, handcuffed Gentles, locked him in the back of a police car for 20 minutes, and then brought unsuccessful charges for disorderly conduct. How much do we know and how do we know it about the information that was actually conveyed to Officer Portak? Because my understanding is that apparently no recordation of this report that was made was available during the litigation. And so there's no way that we can truly accurately determine the actual words that were spoken by the occupant of apparently a nearby dwelling to the city or the city police department. Correct. And that goes to the reliability of the call. To answer your question, it seems that there are only two pieces of information that are in the record about what the call contained. The first was that a black man was looking in garage windows, and the second was the license plate number on the vehicle. And the source of that is the police report that memorializes what was relayed to that officer. Yes, Your Honor. And the license plate doesn't contribute to reliability at all, as the Supreme Court made clear in J.L. Reliability of what? So the reliability has to go to criminality specifically. I understood that there's no issue about reliability of the license being the license that was seen by the citizen who reported it. Correct. There's no issue there. Just like in J.L., there was no issue that the caller correctly identified that J.L. was wearing a plaid shirt, but that didn't make the allegations of criminal conduct more reliable. You recounted a sequence of events and you focused on Officer Portak's conduct. Yes, Your Honor. What is the evidence concerning Officer Unruh? I know there's a representation by Officer Portak that Unruh wasn't there. There seems to be a dispute about that. Mr. Gentle says he was there. I'm ignoring the videotape for the time being since that's not in the summary judgment record. So what's the evidence that Officer Unruh played any role in the alleged Fourth Amendment violation? So I would distinguish the initial seizure from the scope. And we're not alleging that Unruh was involved with the initial seizure at all, but he was involved in the handcuffing. I'm sorry, the initial seizure being the calling out to Mr. Gentle's to stop or to requiring that he provide his identification or his name. I'm just telling him that he's not free to leave. So the most the record shows is that Unruh comes into the picture a little bit later. Yes, and he's involved with the handcuffing. The video shows that, Judge Schwartz. I understand that you want to put the video to the side, but there's still a dispute of fact because you have testimony on the one hand from Portak saying he wasn't there. You have testimony from Mr. Gentle's on the other hand saying I saw him there. That's a dispute of fact because you have conflicting testimony about what these two individuals witnessed in that circumstance. We have two buckets of alleged wrongs, I guess, from your point of view. One is whether the seizure was supported by reasonable suspicion, and the second was whether the scope and duration of that seizure was appropriate. If we think there are disputed facts about whether the stop had reasonable suspicion, do we need to address the seizure point, the duration and scope point? Not with regards to Portak, but yes, with regards to Unruh. How would you propose we address that? Where are the issues of fact there? So the issues of fact, quite frankly, I think that Mr. Gentle, if he had moved for summary judgment, might have been entitled to it. But what courts have considered are duration, intrusive methods, whether officers were acting diligently, and the safety concerns. At no point has anyone articulated that there were any safety concerns at issue that might warrant a handcuffing or locking Mr. Gentle's in the police car. There were intrusive methods, so handcuffing and being locked in what's equivalent to a traveling jail cell. And it lasted for 20 minutes, which is longer than the Supreme Court held in Florida v. Royer. Now, that includes the period of time he was also in the police car, is that what you're talking about? Yes. Yes, Your Honor. And then, so to the extent, Judge Schwartz, that there is a disputed fact, it's whether the officers were acting diligently. They've never at any stage explained what they were doing for the entire 20 minutes or why they needed 20 minutes for Mr. Gentle to be locked and handcuffed. They've offered two supposed justifications. The first is that they needed him to identify himself. Well, they had his identification. They had taken his wallet with his ID in it before he was locked in the back of the police car. And the second thing that they said is that they wanted him to calm down. But wanting someone to be less upset doesn't justify handcuffing them and locking them in the back of the police car. So, first of all, he was only outside of his own car for a matter of seconds, as the video shows. But second of all is that he was reasonably justified by the unlawful search that had happened. What should Officer Portock, what should he have done under these circumstances that the briefing various memos I've read have continuously referred to what was imparted by a citizen as a tip. And it's not what I would consider traditionally to be a tip because none of the information that we've been provided, first of all, suggests either that a crime was in the course of being committed or attempted. I would more accurately view it as maybe a citizen complaint, at least a citizen report, if you will. And again, the lack of any kind of recording deprives us of all sorts of information that should have existed and may have existed. But what should the officer have done having had that citizen information reported to him? I'm hearing from you certainly what he should not have done. But you're not suggesting that he should not have acted upon it at all, are you? No, not at all. So he was perfectly entitled to, quite frankly, a fair bit of what he did. That is, he went to the alley. He went and checked out. He cleared the call, suggesting that there wasn't any reason to be concerned anymore. And what he said is he returned to his routine patrol. So he went, he checked it out. That's something he could have done. He could have also engaged in a voluntary conversation with Mr. Dentals if he wanted. Well, before we get to that, it seems to be happenstance, then, that he does come upon the vehicle which bears the license plate number that he'd been provided, right? Correct. He said he's back to his routine patrol. It's not like he's looking for that vehicle. He just stumbles upon it. And so he, at some point, asks for information, asks for identification, or asks what the name was. I'm forgetting right now. Did he ask for a form of identification? Or did he ask to tell me your name? He asked for a form of identification. But that's after the seizure has already been commenced, as I think we make clear in Section 1 of our brief. So everyone agrees that the seizure happened when... Again, just to be explicit about it, the seizure being actually telling Mr. Dentals to do what? That he was not free to leave. And that happened per Portak's report at JA44. That happened before Officer Portak demanded that Mr. Dentals turn over his ID. So your position that the explanation that we learn about in Mr. Dentals' deposition, that is he really didn't want to deal with the police, does that play a role in the reasonable suspicion calculation? No, because it's based off of what the officer knows at the time. And the officer certainly didn't know that at the time. There's no allegation that he did. We can just go to this malicious prosecution claim.  What evidence do you have that Mr. Unruh played any role in initiating a prosecution here? We're only pursuing the malicious prosecution claim with regard to Officer Portak. And I think it's... Only pursuing as to Officer Portak. Only as to Officer Portak. And I think it's quite clear that there are two pretty straightforward ways that the court could rule for us. The first is that what Officer Portak needed to initiate these criminal charges was probable cause of criminal activity. This disorderly conduct by unreasonable noise statute has two elements. An actus reus element and a mens rea element. The defendants have never offered any argument whatsoever. So it's effectively conceded the mens rea wrong at the point that the mens rea isn't matched. There's no criminal activity. And at the point that they didn't have probable cause of the mens rea, they didn't have probable cause of criminal activity. Mens rea, what's the mens rea here? The intent or reckless disregard for causing the neighborhood to be concerned. Don't you have something simpler here? Isn't there a dispute about how loud it was? Yes. So that's why I said that there are two pretty straightforward ways that the court could rule in Mr. Gentles' favor on this wrong. The mens rea being one because it was entirely conceded. So I think a little analysis would be needed. But the second is on the actus reus wrong. So, you know, quite frankly, the video shows he wasn't being loud. And that makes sense. The video is on summary judgment. Yes. So he stated there's a dispute of fact then based on Mr. Gentles' own testimony about how loud he was. And that makes sense given the time of day. That makes sense given what's happening. So times where this disorderly conduct by unreasonable noise statute has been applied include cases like the A.E. High case where there is a frat party blasting loud music in the middle of the night or McNeil where there's someone's being loud and screaming between 2 and 3 30 in the morning, surrounded by a bunch of senior citizens or vessel where someone's kicked out of a bar at 2 a.m. And so and so start screaming and banging on the doors. I assume your result, your result, you're relying on for this disputed fact about volume, Gentles' deposition. Yes. And I'll support text description in his report. Am I correct? Yes. So in your in those in the record, we have the statements of undisputed fact. We have a response by Mr. Gentles where he, quote, denied. I'm going to use the I.N.G. is screaming and raising his voice to the extent it can be considered a public nuisance. How is that evidential if it's just a response to a statement of undisputed fact? Or do we not need to consider it because we have these other sources I've just mentioned? So because of the other sources, first of all, but second of all, is it's saying that there's the absence of a fact. So to the extent that Portak said there is a fact and that he was being loud and Mr. Gentles said there's the absence of that fact, that is a dispute as to whether that fact is true. So I think that the case that's most analogous on the malicious prosecution is Gilbert, where a neighbor disagreed with the police's decision to tow his neighbor's car. So he was yelling across the street. That's certainly a much greater distance than what was at issue here. This was in the middle of the day and they've offered no sort of argument or suggestion that the neighbors looking on was caused in any way by Mr. Gentles. In fact, a jury could reasonably find that it was caused by the large police presence in the area. If there are further questions, I'm happy to answer them. If not, I'd like to reserve. No, thank you. We'll see you on the bottom. Thank you. May it please the court. Good afternoon, your honors. Andrew Rungus on behalf of the Pottstown defendants. In regard to this case, in looking at the facts and the circumstances, picking up on some of the points that your honors and the court have made in regard to Officer Portak's initial response, in taking a look at the appellant's argument and playing it out to its logical conclusion, their position would be that there is no response that Officer Portak could have made in this situation once the alleyway was cleared of the vehicle and the individual not being there. But as the court is well aware, the standard for the reasonable suspicion is the totality of the circumstances. And we're taking into consideration the totality of the circumstances. In this case, the court should look at the fact that although it's a mile away, it's seven-tenths of a mile away, it's a three-minute drive from the area. It's in close proximity from where the alleyway and the initial call from, again, presumably an individual who observed what is reported from the police report. And I agree with the court that there is scarce information when it comes to what is made known to the officer. But we do know specifically that the two bits of information that were made known was there was a black male who was looking in windows of garages in that alleyway. Excuse me, are these, were we dealing with here a 911 call? That would be the, yes, your honor. There ought to be in place ordinarily a recording system. There would be, yes, your honor. Is there something in the record that says this is a 911 call? There is not, your honor. However, that would be the way that the call would be made for emergency calls into Potsdam. I asked it only because every 911 call, every 911 call I've ever known was recorded. I agree, your honor. It happens in Potsdam. And I can't, I don't know why that information was not put into the record in this case. Unfortunately, I was not counsel of record that handled the case at the district court or through the briefing of this matter. However, we are stuck with the record, so to speak, as we have it. So, the other piece of information that we know is that a subsequent call is made, or at least subsequent information is relayed to the officer saying that the vehicle is leaving the area. When the officer arrives in the area, the vehicle is gone and the call is cleared. Approximately 10 minutes later, in close proximity, so to speak, the officer finds the vehicle with the matching license plate, and based upon the record from the lower district court level, the individual is in close proximity to the vehicle. The officer stops, goes out to speak to the vehicle, the vehicle operator, the black male, and one of the parts that I believe is not mentioned by the appellants is that as the officer is approaching, Mr. Gentles begins to walk away. I don't think there's that. I think that's in the record. No, no. He begins to walk away. Correct. But at that point, the officer then says, Hey, hey, hey, hey, hey, meaning wants to talk to him. And Mr. Gentles then gets into the car and starts the vehicle, at which point the officer comes up and the interactions with him begin. Are you now abandoning the assertion that I understood Mr. Portak to say, which was Mr. Gentles rushed to the car? No, Your Honor. I'm saying that when we're taking the totality of the circumstances, that piece of information from my reading of the briefs was left out of the appellants when they make their argument in the sense of that the officer is speaking about the rush. My understanding of the record, we have the deposition, we have a police report, and we have the affidavit of Mr. Gentles, is that Officer Portak directed his comment to Mr. Gentles. Mr. Gentles decided to proceed to his car. Correct. And that's where we come into that rushed, that rushed commentary. And the issue is to whether or not Mr. Gentles' affidavit of I walked at a regular normal gate as opposed to Officer Portak's view that it was rushed or hurried somehow is a material disputed fact. And isn't it a material disputed fact in the circumstances where the nature of the information, the tip, so to speak, its indicia of reliability, not that the person was making it up, but the indicia of reliability don't necessarily satisfy the factors and such that you needed something else to justify the stop. No, I agree, Your Honor, and I do, I believe that it is. I believe that it is necessary, but I don't believe that... It's a dispute of fact as to whether he rushed or he walked at a normal gate. My point being, Your Honor, is I think that it's important because of the fact, it's important from the officer's perspective as to what happened. Perhaps Mr. Gentles did walk at a normal, at his normal regular steady gate and normal walk, but to Officer Portak, from his experience and understanding, it appeared to be hurried or rushed. But don't we have to let a jury decide that? How is that material then if it's... Because isn't it cooperative of whether or not he had reason to suspect criminality on the part of Mr. Gentles? I don't believe that it is, Your Honor. I think that it depends upon whether, in order for it to be material for a jury to decide, it means that the jury then needs to make a credibility determination as to whether or not it believes Officer Portak's... Perspective. Perspective, as opposed to Mr. Gentles' perspective. But in this case, it has nothing to measure that credibility determination on other than just the mere fact of the normal, regular credibility determinations that a jury would make. And my point being, and it kind of goes to whether or not that self-serving affidavit that the court asked us to discuss comes into play, is if that was the case, then there would never be an instance where a material fact would not come into play and where self-serving affidavits would not be permitted. Because there would always be a material fact in which someone could have their personal belief and opinion where there would be a credibility determination that would need to be made. I don't think of a description of the affidavit was an opinion. The person offered their factual account of how they perceived their behavior. And Mr. Portak, for his point, articulated how he observed the behavior. Correct. And in the examples... And it informed... And I think the reason why it's important is it informed Officer Portak's decision to continue to pursue Mr. Gentles to try to get his attention. Correct. And it also formed the basis then as to under the totality of the circumstances as to make that determination as to whether or not there was some type of that extra something in order to make the decision to detain in order to maintain the status quo and do further investigation as to whether or not criminal activity was afoot based upon a Terry style. I just want to break down a little bit the points that you're making about the normal gait and Officer Portak's perception of the gait. At least in theory, if there were a trial, the district judge might permit Mr. Gentles to demonstrate what his normal gait is. And then the jury could weigh its observation of that demonstration against testimony from Officer Portak that he perceived Gentles to be rushing. And perhaps Officer Portak would watch the demonstration and say, well, that's not actually what it was. Are you with me so far that these are potential things that could happen? I am with you, yes, Your Honor. Okay. So if in this hypothetical, Mr. Gentles were to demonstrate his normal gait and Officer Portak said, yeah, that's what he did. And to me, that's rushing. So where do we go with that in terms of your argument that this is not appropriate, this is not a material dispute of fact? My point to that, Your Honor, is in looking at that there was other evidence available that could have been utilized by Mr. Gentles in order to dispute that fact. And in the cases that are cited in the instances in which these self-serving affidavits have been found to be utilized, for example, the case where they talk about whether or not in the prison system the prisoner went forward and had done all of the necessary administrative steps to exhaust. The evidence from the prison was, well, hey, he never received any of the exhaustion or any of the appeals that were necessary. And the prisoner says, no, no, no, I filed them, I did. And the court in that case determined and said, well, hey, appeals get lost, things happen. There is a question of fact there where nothing else can be shown in order to say whether or not this can be proven one way or the other. So there really is a material question of fact. Here there were other opportunities possibly available to Mr. Gentles in order to be able to show whether or not there was this, as silly as it may sound, hurried walk back to the police. I suppose there was plenty of opportunity for the counsel for Potsdam and the officers to ask him questions. He was offering an affidavit to produce an additional fact. So there was an opportunity. Just because it helps his position doesn't mean it's not admissible for the purposes of the summary judgment decision. But, Your Honor, I understand that. I'm saying that Mr. Gentles could have put forth evidence to support his self-serving affidavit. What more was he supposed to put forth other than his own description of his own conduct? He certainly could have put forth an affidavit from the individual whom he was speaking to. Why does he need to do that? Why is it necessary? Why does he need corroboration? Let's pretend there was nobody else on the street and there was nobody else in the car. Just him and the officer. That's it. Then in that situation, perhaps this would be that self-serving situation. That would be self-serving? No, that would be a situation where an affidavit would be the only means in which it could be possible. So the test you'd like us to lay down is you can offer your own affidavit in support of a description of your own conduct so long as there's nobody else that could attest to it. If there are others who can attest to it, then we can only admit that affidavit if we have corroboration. My only point on that is that under these circumstances, then, what is the scenario in which a district court can grant summary judgment when if the only evidence that is provided is an affidavit from the party saying that they contest the various facts that are brought forward. If that's the only evidence that's presented in the district court record, as it is in this case, then there can never be an instance in which a district court can grant summary judgment. I hear you saying the district court shouldn't be bound by an affidavit that just says, I disagree, but he did a little bit more than just say, I disagree with the fact that the defendant has put on. He proffered affirmative evidence of his normal gait. So are you saying that really, in essence, he's just saying, I disagree with the defendant's facts? Yes, your honor, I believe that's exactly what it is only because if you look at the record and the affidavit, the conclusion is that I walked to the car in my normal gait, in my steady normal gait. That's conclusory at best as to whether or not it's material. Again, it's material as to whether or not it disputes the officer's interpretation as to whether or not it was hurried. But again, it is self-serving because there's no other evidence to dispute that or to support that. Do you agree that the focus should be on the information available up until the time the stop happened for the purposes of reasonable suspicion? Yes, your honor. As a result, did the district court err in relying on the purported refusal to provide identification as part of its Terry Stop analysis? Would that be error? I think it depends upon when the district court made the determination as to when the seizure occurred. And the reason that I point that out to is because, as was discussed in the briefs, it depends upon when Mr. Jentles submitted to the seizure. Doesn't the record reviewing the facts in a light-moving statement occur when he acceded to the authority pronounced by Officer Portock, don't go? Yes, your honor. That's when the seizure happened. Then it would be inappropriate under that scenario to consider anything that happened after that for the purposes of examining the Terry Stop. Yes, but again, without the benefit of the video as your honor has indicated and we agree that the video is not in evidence in the district court.  Without that, in looking at the record at that point there is a question as to where the there is definitely evidence which shows that there is no dispute of the fact that Mr. Jentles refuses to give and is uncooperative I agree, I understand but the question is when he comes up and says to him in the report that he was told he was not free to leave at that point as being the first point in the report it then goes into what the interactions with him were in the district court opinion the district court's opinion doesn't specifically go with that specific timeline is the point that I'm making out to you so my point being is that the district court it's not necessarily clear with that definitive line as to where the court determines when the seizure takes place based upon the reading of the district court's opinion it might have been a few moments later after there was at least one of the requests for the ID and it's refused I'm sorry, not for the ID where the statement is made this is a criminal investigation at which point Mr. Jentles becomes belligerent and says there is no criminal investigation there can't be a criminal investigation at that point I realize that may not be clear but in looking at the district court's opinion I think you'll notice the decision of when a seizure occurs is a de novo legal conclusion I agree, yes, but I do think that the court should certainly give at least deference and review to Judge Jones' decision especially given the fact that in this case, and again I recognize it's a de novo decision that the fact that there's a Terry stop may have been, based upon Judge Jones' opinion may have been agreed to by Mr. Jentles in the district court filings he conceded to it, he didn't move I'd like to just ask you very quickly on the malicious prosecution claim there seems to be another disputed fact and it has to do with the volume of Mr. Jentles' voice because we have to focus on that since that's the disorderly conduct provision relied upon by Officer Porduck to charge him how do you get around that? He says he wasn't loud and people were already outside and any additional people came because of the police response, not his voice and the volume, I should say I do, Your Honor, I do have a way around that I'll hear you the cases cited specifically Gilbert and Merez, as I'm sure the court has reviewed, the standard that is being implied in those cases is a standard of beyond a reasonable doubt and the when going through the analysis that's provided to we're only at the probable cause standard I'm with you, but you have to have probable cause to believe for the purposes of this citation that the individual engaged in disorderly conduct by raising their voice, by being unreasonably loud there seems to be a dispute about whether the loudness was unreasonable and perhaps whether there was loudness at all I don't know that there was loudness this again brings back to my whole argument before of that self-serving argument, that self-serving affidavit again, this is a prime example What if there were no depositions taken? What if the borough said we're not going to take a deposition we're going to make a motion for summary judgment and Mr. Gentles agrees he's going to give an affidavit exactly the same affidavit So all we have is the affidavit and the police report Is it a self-serving affidavit that we can't consider using your language self-serving? It's a district court's language that was used Consider that affidavit or not under that scenario I think depending on the basis of the record that is supplied with the police reports and the other information that's there Your point of view would be if we have a police report an individual could not offer an affidavit to rebut with specificity as Judge Freeman was saying not just a blanket denial but actual specificity from your point of view that could not be sufficient evidence to survive summary judgment Under certain scenarios Your Honor, yes, I think that it could be I don't know that based upon this district court's record that it would be under these scenarios Understood Thank you for your time Two points, Your Honor The first, Judge Smith, is to respond to your question about the phone call Just now we heard that it was a 911 call Nothing in the record supports that The only information in the record is that at JA44 that they received information from an anonymous call We pointed this out at pages 18-19 of our opening brief and it was not disputed in the response brief There's nothing in the record suggesting that the call was made to 911 As you mentioned in your question the reason that matters is because there's no recording here and the lack of recording goes to a lack of reliability The second point, and last point that I want to make in my rebuttal, is fundamentally what we just heard is that there's a dispute of fact That's why this case should go to a jury There's a dispute of fact, Judge Schwartz, to the question you asked about when he walked to his car JA44 Officer Portock's own words said at that point, which was before he asked for his ID he told him he was not free to leave and so there's a dispute of fact as to the sequence of those events Judge Freeman, there's also a dispute of fact about the question that you asked which was the pace at which Mr. Gentles walked to his car Officer Portock said he rushed Mr. Gentles said he walked at his normal pace To the extent that opposing counsel says that Mr. Gentles' affidavit is not properly relied on, that's incorrect for a few reasons First, I would point to Lupien and Palladino the cases we cite at page 22 of our brief saying that yes, of course affidavits are self-serving what matters is whether they're conclusory and as Judge Freeman, your question about it, here it's not conclusory because it states specific facts about the pace at which he was walking But second of all, I would point to Federal Rule of Civil Procedure 56 which specifically points to affidavit as a key means of establishing evidence It's just not the case that an affidavit can't be relied on in this context But then third about the pace at which he rushed to his car is even putting that dispute aside Mr. Gentles is perfectly entitled as an ordinary citizen to leave and not talk to the police That's what differentiates a consensual encounter from a Terry stop And his refusal, his desire not to talk to the police is something that he has the right to do and something that the officers couldn't use in this circumstance to justify the seizure One question for you about the alleged 911 call So when we talk about a tip's reliability we consider whether it was conveyed over the phone or in person and whether the tipster is known or unknown and other factors But why does it matter if it was a 911 call or some other method of conveying a phone tip? So this is what the Supreme Court talked about in Navaretti Again, we talk about this at pages 18 and 19 of our brief But because often there's some means of getting follow-up information when there's a 911 call and that you don't have in a situation like this necessarily So if, for instance, the caller dialed the precinct directly or somehow had the officer's phone number or cell phone number how would that be different from a 911 call? So it goes to prong two of the five-factor analysis whether the informant can be held responsible if the allegations are untrue So possibly if they direct dialed the officer's phone number and they happen to know them then the officer could call them back But it's not clear that that was the case here It's not a prong that they dispute at all in their brief So the only prong they dispute is prong four or possibly prong three But they don't dispute this one But even if they did, there's just no record evidence to support that they had any way of following up with this individual or holding them accountable The court thanks counsel for their patience to get to you this morning and for your helpful arguments The court will take the matter under review